**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**JOSEPH A. VANCE,**

   **Plaintiff,**

**v.**                                        **Civil Action No. 2:13-cv-03631**

**CAROLYN W. COLVIN, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**

   **Defendant.**

**MEMORANDUM OPINION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Presently pending before the Court are Plaintiff's Brief in Support of Judgment (ECF No. 15) and Defendant's Brief in Support of Defendant's Decision (ECF No. 18).  Both parties have consented to a decision by the United States Magistrate Judge.

Claimant, Joseph A. Vance, filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income benefits on August 12, 2009, alleging disability beginning August 23, 2008.  Claimant asserts experiencing the following conditions:  heart disease, chronic back pain, head injury, vision problems and severe headaches (Tr. at 174).  The claims were denied initially and upon reconsideration.  Thereafter, Claimant filed a written request for hearing on May 12,

1

2010.  On September 19, 2011, Claimant appeared at an administrative hearing held by an Administrative Law Judge in Charleston, West Virginia.  A decision denying the claims was issued on October 3, 2011.  Claimant's request for review by the Appeals Council was denied on January 17, 2013.  Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2013).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*,

658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2013).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy.  *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 18).  Under the second inquiry, the ALJ found that Claimant suffers from a history of severe impairments of ischemic heart disease with chest pain, residuals of traumatic head injury, depression, anxiety and gastroesophageal reflux disease. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 19).  The ALJ then found that Claimant has a residual functional capacity (RFC) for light work, reduced by nonexertional limitations[1] (Tr. at 21).  The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 31).  The ALJ concluded that Claimant could perform light exertional jobs such as assembler, security and janitor (Tr. at 32).  On this basis, Claimant's applications were denied (Tr. at 32-33).

---

[1] Claimant can occasionally climb ladders, ropes and scaffolds.  He should avoid concentrated exposure to extreme cold or hazards such as heights and machinery.  Claimant is limited to routine, repetitive task that involve no more than two to three steps and do not require more than a rudimentary capacity for reading and math (Tr. at 21).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 7, 1960 (Tr. at 170).  Claimant received his GED in 1977 (Tr. at 180). Claimant states that he was in special education classes.  The West Virginia Social Security Disability Determination Section was informed by the Special Education department of Boone County Schools on August 25, 2009, that the school did not have any records pertaining to Claimant (Tr. at 183).  Claimant served in the Army and received an undesirable discharge due to not being able to adapt to military life (Tr.

at 21).   Claimant has a driver's license, however, his license was suspended due to various Department of Transportation violations with the trucks he drove that were the responsibility of his former employer (Tr. at 22).

Claimant reported that he stopped working due to disability on August 23, 2008. Claimant worked as a long haul truck driver.  Claimant reports that he had a heart attack and was fired from his job because he missed too much work (Tr. at 174).  Boone Memorial Hospital records report Claimant's arrival to the Emergency Room as a result of acute coronary syndrome (Tr. at 429).   The Mayo Clinic defines acute coronary syndrome as a term used for any condition brought on by sudden, reduced blood flow to the heart.

Claimant asserts that the ALJ failed to comply with 20 C.F.R. § 404.1529 in evaluating Claimant's subjective symptoms as he failed to consider the "observations by our employees." Claimant argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinions of Dr. Iraj Derakhshan, Dr. Tony Goudy and Sheila Kelly, M.A..  Claimant asserts the decision is not based on substantial evidence because the ALJ failed to include all of Claimant's limitations in the Residual Functional Capacity assessment (hereinafter RFC) (ECF No. 15).   Defendant asserts the ALJ's decision is supported by substantial evidence (ECF No. 18).

Evaluating Mental Impairments

The five-step sequential evaluation process applies to the evaluation of both physical and mental impairments.   20 C.F.R. § 416.920a (a) (2013); 20 C.F.R. § 404.1520a (a) (2013). In addition, when evaluating the severity of mental impairments, the Social Security Administration implements a "special technique," outlined at 20 C.F.R. §§ 404.1520a and 416.920a. *Id.*   First, symptoms, signs and laboratory findings

are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2013). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his decision the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e) (2013). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2) (2013). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3) (2013). The first three areas are rated on a five-point scale: None, mild, moderate, marked and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4)(2013). A rating of "none" or "mild" in the first three areas and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2013). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2) (2013). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3) (2013). The ALJ incorporates the findings derived from the analysis in his decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation

> in each of the functional areas described in paragraph (c) of
> this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2) (2013).

The ALJ held that Claimant's mental impairments, considered singly and in combination, do not meet or medically equal Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders) (Tr. at 38). *See*, 20 C.F.R. 404 Subpart P, Appendix 1. To demonstrate a mental impairment under the Listings, Claimant's mental impairments must result in at least two of the following:

- Marked difficulties in maintaining social functioning;
- Marked restriction in activities of daily living;
- Marked difficulties in maintaining concentration, persistence or pace; or
- Repeated episodes of decompensation, each of extended duration.

A marked limitation means more than moderate but less than extreme. Lester Sargent, M.A., performed a Mental Status Examination of Claimant on April 8, 2010 (Tr. at 525-530). Claimant reported that he was last employed in 1998[2] as a coal truck driver (Tr. at 526). Claimant reported that in January 2010 he was taken to a hospital and referred to a mental health clinic. Claimant reported, "They figured out I was not suicidal. I passed out because the woman I was with kept feeding me vodka and I was on Viagra. She freaked out and called 911." (*Id.*) No history of mental health treatment was reported by Mr. Sargent. Claimant reported one arrest for DUI in the 1990s (Tr. at 527). During the Mental Status Examination, Claimant stated his license was suspended due to unpaid fines. Claimant reported "occasional use of marijuana with his last use within the past two months" (Tr. at 527). Mr. Sargent reported Claimant's affect as mildly restricted. Claimant's thought processes were understandable and connected.

---

[2] The Mental Status Examination performed by Lester Sargent, M.A., on April 8, 2010, lists Claimant's disability onset date as 1998 (Tr. at 525-529). However, Claimant's disability applications allege a disability onset date of August 23, 2008.

His mood was remarkable for sadness and anxiety. There was no evidence of delusions, paranoia, obsessive thoughts or compulsive behaviors. His judgment was mildly deficient. There was no evidence of unusual perceptual experiences. Claimant's insight was mildly impaired based on his responses to questions regarding social awareness. His immediate and remote memories were mildly deficient. His recent memory was moderately deficient. Claimant's concentration, persistence and pace were mildly deficient (Tr. at 528). Claimant's social functioning was mildly deficient.

Claimant reported that he goes to stores and runs errands as needed. He takes care of his pet dog. He takes short walks for exercise. He stated that he could perform household chores including cooking, laundry, dishes and vacuuming. Claimant is able to perform all basic self-care duties without assistance. He mows the lawn with a riding mower. Claimant reported to fishing and hunting 1 or 2 times a year (Tr. at 207).

On April 27, 2010, Bob Marinelli, Ed.D., found under Listing 12.04 (Affective Disorders) and Listing 12.06 (Anxiety-Related Disorders) that Claimant's impairment(s) are not severe (Tr. at 532). Mr. Marinelli found that a medically determinable impairment of panic disorder without agoraphobia is present but does not precisely satisfy the diagnostic criteria for the Listings (Tr. at 537). Mr. Marinelli found Claimant's functional limitation of activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace to be mild (Tr. at 542). Claimant did not experience any episodes of decompensation. Mr. Marinelli concluded that evidence did not establish the presence of paragraph "C" criterion to satisfy Listings 12.04 and 12.06 (Tr. at 543). Mr. Marinelli's notes reflect the lack of any history of mental health treatment (Tr. at 544). The ALJ gave some weight to Dr. Marinelli's opinion as it was generally consistent with the medical record evidence.

8

During an evaluation in July 2010 by Sheila E. Kelly, M.A., Claimant described wrecking a 4-wheeler while drinking the previous year.   Claimant reported to last working in 2008 as a coal truck driver (Tr. at 558).   Claimant reported to "piddling" with his dune buggy and spending time with his friends (Tr. at 262).   Claimant self-reported experiencing back pain as a result of bulging discs.   Ms. Kelly stated that no records of any MRIs were included in the medical records she received from Claimant's attorney's office (Tr. at 559).   Claimant reported his "heart medicine" and pain medications were helpful.

Ms. Kelly administered a Wechsler Adult Intelligence Scale – Third Edition (hereinafter WAIS-III).   Claimant scored a verbal IQ of 79, performance IQ of 78, full scale IQ of 77, verbal comprehension index of 78 and perceptual organization index of 84.   Ms. Kelly indicated that the full scale IQ falls within the borderline range of intellectual ability.

Tony Goudy, PhD, evaluated Claimant in 2011, three years after Claimant's alleged disability onset date.   Claimant informed Dr. Goudy that he had never received mental health treatment.   Dr. Goudy found Claimant to suffer from mild impairment in activities of daily living (Tr. at 704).   Dr. Goudy found Claimant to be moderately impaired in social functioning and concentration, persistence and pace.   Claimant did not experience any episodes of decompensation.   The ALJ gave Ms. Kelly's and Dr. Goudy's opinions little weight as they were inconsistent with the medical record evidence and primarily relied on Claimant's self-reported history and status.

The ALJ held that Claimant did not experience any marked limitations in functioning (Tr. at 39).   The ALJ found that Claimant's mental impairments, considered

singly and in combination, do not meet or medically equal the criteria of Listings 12.04 and 12.06.

Disorders of the Spine

Serafino S. Maducdoc, Jr., M.D., performed a Disability Determination Examination of Claimant in November 2009 (Tr. at 378-381). Dr. Maducdoc reported that Claimant takes pain pills every day for back pain (Tr. at 378). Claimant asserts that his lower back was hurt two years earlier while putting a transmission in a tractor-trailer. Claimant self-reported that an X-ray and MRI revealed herniated disc at L4-L5, but stated that he never went to a specialist or neurosurgeon.

Iraj Derakhashan, M.D., examined Claimant in November 2009 and December 2009 for headaches and lower back pain. Claimant's neurological exam was normal. Dr. Derakhashan prescribed Norco 10/325mg for pain. Claimant reported to Dr. Derakhshan that the medication resolves his pain. The ALJ gave Dr. Derakhshan's opinion little weight because it was inconsistent with the medical record evidence and unsupported by his own treatment record.

Claimant's alleged back injury occurred nearly a year prior to the alleged disability onset date. The ALJ concluded that the fact that the impairment(s) did not prevent Claimant from working at that time strongly suggests that it would not currently prevent work. Further, Claimant testified that he did not look for work after he stopped working (Tr. at 56).

The ALJ concluded that the record includes evidence strongly suggesting that Claimant has exaggerated symptoms and limitations. The record does not contain findings or radiological evidence to support Claimant's alleged back and neck pain, suggesting that they are not as limiting as alleged.

Ischemic Heart Disease

On December 10, 2009, G. Bousvaros, M.D., a State agency medical consultant, performed a Physical Residual Functional Capacity assessment of Claimant (Tr. at 392-399).  Dr. Bousvaros reported that Claimant's credibility was "limited as he has known of several normal stress tests after the initial procedure" (Tr. at 397).  Dr. Bousvaros commented that Claimant alleged experiencing a heart attack that led to frequent work absences and his consequent "lay-off" from work (Tr. at 399).  The medical record contains a report of cardiac catheterization on September 6, 2008, after an earlier positive stress test.  Dr. Bousvaros stated that the positive stress test was not in the record he reviewed, nor was there record of "the alleged heart attack admission."  (*Id.*) The cardiac catheterization showed severe narrowing of the LCX[3] which was successfully stented with a drug eluting stent.[4]  Since the successful stent, Claimant has had atypical chest pains that have led to at least three (3) in-file clean stress tests which have shown ischemia and exertional capacity of 10, or more, METs.[5]  Dr. Bousvaros reported that based on the above and on the cardiac domain, Claimant has the capacity to lift 25 pounds and carry 50 pounds.  Claimant has the capacity to stand and/or walk for 6 hours.  (*Id.*)  State agency medical consultant James Egnor, M.D., completed a case analysis affirming Dr. Bousvaro's findings (Tr. at 524).  The ALJ gave some weight to the consultants' findings as they are consistent with the medical record of evidence.

---

[3] LCX stands for left circumflex coronary artery.
[4] A drug eluting stent is described by www.webmd.com as a peripheral or coronary stent (a scaffold) placed into narrowed, diseased peripheral or coronary arteries that slowly release a drug to block cell proliferation.
[5] MET stands for metabolic equivalent of task.

The ALJ stated the record reveals that Claimant's allegedly disabling impairment(s) were present at approximately the same level of severity prior to his alleged disability onset date.

Credibility Determination

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence in forming the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. The ALJ concluded that the objective findings do not support the extreme limitations alleged by Claimant and reveal that he is not credible (Tr. at 23).

Claimant's headaches and alleged neck pain are managed with medication. The ALJ concluded that Claimant is completely independent in all activities of daily living and tinkers in a workshop on his property. He is able to mow his lawn and spend time with his friends (Tr. at 31). The ALJ stated, "When taking the complete record of evidence into considerations, Claimant's subjective complaints are out of proportion to

12

and not supported by objective medical evidence." The ALJ concluded that "While Claimant's impairments are severe in that they have more than a minimal effect on his ability to function, they are not totally disabling and do not preclude the performance of all work related activity." (*Id.*)

<u>Compliance</u>

The ALJ noted that the records "mentioned issues with compliance on a few occasions," suggesting "Claimant may not have been as candid about the nature of his impairments as alleged" (Tr. at 26). Ziad Chanaa, M.D., saw Claimant in January 2010. Claimant reported feeling much better. Dr. Chanaa noted that Claimant had an episode where he passed out drunk at the Boone Memorial Hospital (Tr. at 551). Under assessment, Dr. Chanaa indicated there was a compliance issue (Tr. at 547). Dr. Chanaa reported that Claimant "is not compliant with his follow-up as well as with follow-up with his specialist" (Tr. at 733). Dr. Chanaa also reported that Claimant is not compliant with Dr. Chanaa's orders to get labwork and blood tests performed (Tr. at 732).

<u>Vocational Expert's Testimony</u>

At the administrative hearing, the ALJ asked the Vocational Expert (hereinafter VE) if jobs existed in significant numbers in the national economy that someone with Claimant's age, education, past relevant work and previously stated exertional limitations, could perform (Tr. at 70-73). VE Nancy Shapiro testified that such a person could perform light jobs including an assembler, security and janitorial (Tr. at 77). Based on the VE's testimony, the ALJ ruled that Claimant could perform work in the national economy, and therefore, he was not disabled under the Act (Tr. at 31-32).

Pursuant to SSR 00-4p[6], VE Shapiro's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

<u>Conclusion</u>

The ALJ's decision was issued on October 3, 2011.  The ALJ found that Claimant's impairment does not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Substantial evidence supports the determination of the ALJ.  Contrary to Claimant's assertions that the ALJ failed to consider his impairments in combination, the ALJ's decision reflects an adequate consideration of his impairments.  The ALJ appropriately weighed the evidence of record in its entirety to determine that Claimant failed to demonstrate that Claimant's functional capabilities preclude his ability to perform any substantial gainful activity.  The ALJ fully complied with his duty in keeping with 20 C.F.R. § 404.1523 (2013).  Accordingly, the ALJ denied Claimant's applications for DIB and SSI under the Social Security Act.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is DENIED, Defendant's Brief in Support of Defendant's Decision is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

---

[6] Social Security Ruling 00-4p:  Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

**Enter:  March 18, 2014.**

Dwane L. Tinsley
United States Magistrate Judge